## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:08CR00015 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **KENNETH RAY STEVENS,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Dennis H. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Kenneth Ray Stevens, a federal inmate proceeding pro se, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2011). The government moved to dismiss, asserting that in his written Plea Agreement, Stevens had waived his right to bring such a motion. Because Stevens alleged that his trial counsel had provided ineffective assistance with regard to the Plea Agreement and had failed to file a notice of appeal after being asked to do so, I set the matter for an evidentiary hearing and appointed counsel for Stevens. Following that hearing, I now conclude that Stevens is not entitled to relief.

# I

In determining the facts of the case I have taken into account the rationality and internal consistency of the testimony and exhibits presented at the hearing, their extent of detail and coherent nature, the manner of testifying by the witnesses, and the degree to which such testimony is consistent or inconsistent with other evidence in the case. My findings of fact and conclusions of law are as follows.

On January 26, 2009, Stevens pleaded guilty, pursuant to a written Plea Agreement, to conspiring to distribute oxycodone, morphine, methadone, and hydrocodone, in violation of 21 U.S.C.A. § 846 (West 2003) (Count One of the Superseding Indictment) and possessing a firearm in furtherance of a drug trafficking crime or using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c) (West Supp. 2011) (Count Three).

Before accepting Stevens' guilty plea, I questioned him thoroughly to ensure that his plea was knowing and voluntary. After being sworn, he affirmed his understanding that his answers to my questions were under oath and that he could be prosecuted for perjury for making false statements. He stated that he was 59 years old, that he had attended school until the seventh grade, that he could read and write, and that he had worked as a roofer and a coal miner.

Stevens testified at some length about mental health problems he had suffered in the 1990s and in-patient treatment he had received for these problems after he shot himself in the head in an apparent attempt to commit suicide. He stated that he was taking medication for treatment of depression and other unrelated medical conditions, but had not made any other suicide attempts. When I asked if his only ongoing mental health issues were anxiety and nervousness, he agreed. I asked Stevens, "Now, do any of these medications that you're taking affect your ability to understand what's going on here today?" Stevens responded, "I don't know. I think the medicine I was taking for my --- not anymore, no, not now." (Tr. Plea Hr'g 9, Jan. 26, 2009.) He denied that he was under the influence of alcohol.

Stevens indicated he had had an adequate opportunity to discuss his case with his attorney. He reviewed a copy of his Plea Agreement and affirmed that he had signed it and initialed each page to indicate that he had read it. He affirmed that he had had an adequate opportunity to read and discuss the Plea Agreement with counsel and that he was fully satisfied with his attorney's representation.

The prosecutor then summarized the terms of the Plea Agreement, including the following: the maximum sentence of twenty years that Stevens faced on the conspiracy offense; the five-year, consecutive mandatory minimum sentence he faced on the firearms offense; the stipulation that Stevens would be held

responsible for a Base Offense Level ("BOL") of 32 under the United States Sentencing Commission Manual; and his waiver of his right to appeal and to file a later motion or petition seeking to have his conviction or sentence set aside. Stevens agreed that he understood these terms of the Plea Agreement, including the waivers of appeal and collateral attack. He denied that anyone had made any promise outside the terms of the Plea Agreement that had caused him to plead guilty and that anyone had attempted to force him to plead guilty.

Stevens indicated his understanding of the consequences of the guilty plea and the fact that sentence would be determined according to the sentencing guidelines after preparation of the Presentence Investigation Report ("PSR"), at the discretion of the judge. I asked Stevens, "Do you understand that your sentence may be different from any estimate that your lawyer may have given you?" He stated, "Yes." (*Id.* at 36.)

I then reviewed the elements of the charges. Stevens indicated his understanding of what the government would have had to prove in order to convict him at trial and that he was pleading guilty because he was, in fact, guilty of the charges. After the prosecutor reviewed the facts in support of the guilty pleas, Stevens stated that he did not contest or dispute any of those facts.

I found from Stevens' responses during the plea hearing that he was competent and capable of entering an informed plea and that his guilty plea was

knowing and voluntary and supported by the facts. On these findings, I accepted his guilty plea.

At a sentencing hearing on May 18, 2009, I adopted the PSR findings, to which the parties did not object. I then sentenced Stevens to a total sentence of 211 months imprisonment on Counts One and Three. Pursuant to the Plea Agreement, other charges against him were dismissed. No notice of appeal was filed.

In his present § 2255 motion, Stevens alleged that his attorney gave him ineffective assistance by delegating to a non-lawyer the responsibility of advising Stevens about the Plea Agreement; by encouraging him to accept a Plea Agreement that waived his right to appeal and bring a collateral attack; by failing to file a notice of appeal even though he was directed to do so; by failing to research the facts in support of the firearm charge before encouraging Stevens to plead guilty to it; and by failing to advise him of the five-year consecutive sentence he faced on the firearm offense.

## II

### A. WAIVER OF § 2255 RIGHTS.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing

and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

Whether the waiver is intelligent and voluntary depends "'upon the particular facts

and circumstances surrounding that case, including the background, experience and

conduct of the accused.'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir.

1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[I]n the absence of

extraordinary circumstances, the truth of sworn statements made during a Rule 11

colloquy is conclusively established, and a district court should . . . dismiss any

§ 2255 motion that necessarily relies on allegations that contradict the sworn

statements." *Lemaster*, 403 F.3d at 221-22. After determining that the defendant

had entered a valid guilty plea and waiver of his § 2255 rights, the court in

Lemaster addressed the defendant's ineffective assistance claims only to the extent

that they had some alleged bearing on the validity of the plea. *Id.* at 222-23.

Claims that had no bearing on the validity of the guilty plea, such as claims

alleging ineffective assistance at sentencing, the court dismissed as waived. *Id.* at

223.

The government argued in its Motion to Dismiss that Stevens' valid guilty

plea, pursuant to the Plea Agreement, waived his right to bring this § 2255 action.

Upon review of the record and for the reasons stated here, I agree.

Stevens' statements during the guilty plea colloquy offered no indication

that he was not competent to enter a valid guilty plea, that he did not understand

the proceedings, or that he was not voluntarily pleading guilty. He stated under oath that he was satisfied with his counsel's representation, that he had read and understood the terms of the Plea Agreement and had reviewed them with counsel, that he understood and was voluntarily waiving his right to appeal and his right to bring a § 2255 motion, that he understood the sentences he faced, including the mandatory minimum five-year sentence on the firearm offense, and that he had no dispute with the facts summarized by the prosecutor in support of the guilty plea. Because Stevens' § 2255 claims are thus directly contradicted by his statements during the plea colloquy, the court would ordinarily presume his in-court statements to be the truth and summarily dismiss his § 2255 claims. *Lemaster*, 403 F.3d at 221-22.

Stevens asserts in his § 2255 motion, however, that his attorney denied him representation in some respects, or provided ineffective assistance, in advising him about the Plea Agreement and its consequences and that counsel's actions constitute an extraordinary circumstance that undermines confidence in the veracity of Stevens' statements under oath during the plea colloquy and the validity of his guilty plea itself. Accordingly, I will consider Stevens' claims of ineffective assistance to the extent that they may bear on the validity of the guilty plea and the Plea Agreement waivers of the right to appeal and the right to bring this § 2255 action.

B. Ineffective Assistance Claims.

1. Claims Abandoned at the Evidentiary Hearing.

Shortly after his arrest, Stevens and his family retained the Conway Law Firm of Abingdon, Virginia, to represent Stevens. Attorney Jimmie L. Hess, Jr., of that firm moved on March 19, 2008, to be substituted as Stevens' attorney and remained his counsel of record until after sentencing.

In an affidavit attached to his § 2255 motion, Stevens alleged that a person employed by the Conway Law Firm, named Bart Conway, told Stevens' family that he was an attorney and would take Stevens' case, that Stevens continued to believe Conway was his attorney and Jimmie Hess was his assistant, and that Stevens signed the Plea Agreement and then entered the guilty plea, relying on inaccurate advice from Conway, having never discussed the agreement's terms or consequences with a licensed attorney. Stevens' affidavit further claimed that he had advised Hess that "there were no guns involved with the drugs" (Stevens Aff. ¶16, May 13, 2010), but Hess did not investigate this issue and nevertheless advised Stevens to plead guilty to the firearms offense. Stevens' affidavit also stated that after I imposed the sentence, he asked Hess that day to file an appeal. Stevens' daughter and his former wife also submitted affidavits in support of the § 2255 motion, stating that Conway referred to himself as Stevens' attorney.

In support of the government's Motion to Dismiss, Bart J. Conway, who is a brother of B.L. Conway, the owner of the Conway Law Firm, filed an affidavit, stating that he was a paralegal and investigator with the firm, that he had never represented himself as an attorney to anyone and that he had never provided legal advice to Stevens. Attorney Hess also filed an affidavit, stating that he had made it clear to Stevens and his family from the beginning of the relationship that he, not Conway, was the attorney and stating that Stevens never asked him to file a notice of appeal.

Under 28 U.S.C.A § 2246 (West 2006), in deciding § 2255 claims, I may consider affidavits in addition to oral testimony or depositions. I do not find it appropriate to decide the issues in this case on the basis of affidavits, however. Instead, because the opposing affidavits created material disputes of fact, I set the matter for an evidentiary hearing and gave both parties equal opportunity to present live testimony and other evidence as they saw fit in support of their claims.

Stevens did not offer any evidence at the hearing consistent with the statements from his affidavit about Conway or his request for an appeal, nor did he move for admission of the affidavit. Stevens himself did not testify at the hearing, although he was present. None of the witnesses called by Stevens' habeas counsel testified indicating that Stevens or his family members believed Conway was his attorney, that Stevens gave Hess any evidence with which to challenge the factual

basis of the guilty plea on Count Three, or that Stevens asked Hess to file an appeal.

In a § 2255 motion, the defendant bears the burden of proving his claims by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Stevens did not meet this burden.

Moreover, the evidence at the hearing was in direct contravention of Stevens' initial claims regarding his beliefs about Conway and the alleged request for an appeal. On cross-examination, counsel for the government asked Hess, "Did [Stevens] ever ask you by, by word, telephone call, letter, in any manner whatsoever, to appeal the decision of this court?" Hess answered, "No." (Tr. 2255 Hr'g 56, April 11, 2011.) I find this unrebutted testimony to be credible. Therefore, I will deny relief on Stevens' claim that counsel failed to file a requested notice of appeal.

Conway testified at the hearing about his work at the law firm generally and the nature of his involvement in Stevens' case in particular. I find his testimony credible and accept it as factual.

When Stevens' family members first came to the law firm, Conway introduced himself to them as a paralegal and investigator and introduced Hess, who was also present, as their attorney. Conway gave each person his business card, which stated his role as a paralegal and investigator, and one of Hess'

business cards, identifying him as an attorney. At Hess' direction, Conway worked extensively on Stevens' case, but only in his non-attorney role, conducting research, obtaining records, and responding to telephone calls from family members, among other things.

Conway also visited Stevens in jail. On January 8, 2009, Hess asked Conway to deliver a written Plea Agreement to Stevens at the jail, because the prosecutor would recommend a reduction in the offense level for acceptance of responsibility only if Stevens signed the Agreement by January 9, 2009. Hess also asked Conway to draw Stevens' attention to the section of the Agreement stipulating to a BOL of 32, which Conway did. Conway denied giving Stevens any information or advice whatsoever about what sentence he would receive if he signed the Plea Agreement and denied ever referring to himself as Stevens' attorney or telling anyone that Hess was assisting him in the case.

Based on this evidence, which is uncontradicted, I will deny relief on Stevens' claim that Conway misrepresented himself to be an attorney and gave him advice about the benefits of the Plea Agreement.

I will also deny relief on Stevens' claim that Hess advised him to plead guilty to the firearm offense despite evidence indicating that Stevens was not guilty of this offense. The government's recitation of the investigative evidence in support of this charge was sufficient to support the guilty plea, and Stevens

presented no evidence at the evidentiary hearing upon which he could have proven his innocence, had he proceeded to trial.

    2.  Counsel's Representation Regarding the Plea Agreement.

    As to his other § 2255 claims, Stevens primarily argues that the quality of assistance he received from the Conway Law Firm was so deficient that he was deprived of his right to counsel altogether in reaching the decision to plead guilty under the written Plea Agreement.  Relying on the principles of *United States v. Cronic*, 466 U.S. 648, 659 (1984), he asserts that he need not demonstrate prejudice resulting from counsel's conduct.  In the alternative, Stevens argues that trial counsel's representation fell below professional norms and absent counsel's deficient advice, he was prejudiced, in that he would not have pleaded guilty pursuant to the offered Plea Agreement absent counsel's errors.  *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

    Under most circumstances, in order to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice.  *Strickland*, 466 U.S. at 687.  First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation.  *Id.* at

687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When a defendant alleges that counsel's error led him to enter an invalid guilty plea, he shows prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59.

Proof that counsel's deficiencies resulted in prejudice is not required where the defendant proves actual or functional denial of counsel. *Cronic*, 466 U.S. at 659. The elimination of the prejudice prong under *Cronic* may occur in limited circumstances, including instances when the accused is denied the presence of counsel at a critical stage of the criminal proceedings or when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (internal quotations marks and citations omitted). If the defendant proves one of these situations, he "need not show that the proceedings were affected" by counsel's absence or deficiencies. *Id.* at 696.

Hess testified at length about his representation of Stevens. He first met with Stevens at the Bristol City Jail, then later with his family at the law firm's

offices.  After receiving discovery materials from the government, Hess met with Stevens at the jail again to review the materials with him, including tapes of codefendants' statements to law enforcement about their transactions with Stevens. He also looked into whether Stevens could earn a sentence reduction for offering substantial assistance to law enforcement.  Hess estimated that he met with Stevens 10 to 14 times, at the jail or after court appearances, to discuss the case, and nothing in the record disproves this testimony.  Among other things, Hess explained to Stevens the elements of the federal sentencing guidelines and what facts could affect the calculation of the sentencing range.  At some point, Hess began to discuss with his client the possibility of working out a plea bargain with the prosecutor, Dennis Lee.

The biggest concern that Hess and Stevens had during plea negotiations was the difficulty of predicting what the drug weight attributable to him would be. Hess feared it might be high enough to place Stevens in a BOL of 40 under the sentencing guidelines.  For some time, however, Lee refused to offer a plea deal that included a stipulation limiting drug weight in Stevens' case.  Hess told Stevens that he did not see any advantage to signing a plea agreement without a stipulation to an acceptable BOL.  Stevens told Hess he would accept a Plea Agreement that included a stipulation to a BOL of 32.  Hess relayed this information to Lee, who

ultimately emailed Hess a written plea agreement on January 8, 2009, stipulating to a BOL of 32.[1]

Lee told Hess that if Stevens had not "signed something by Friday," which was January 9, 2009, Lee would object to any reduction in offense level based on acceptance of responsibility. Hess had a schedule conflict on January 8, 2009, so he gave the written agreement to Conway to deliver to Stevens and thereafter advised Lee that Stevens had signed the Agreement. After Conway brought the signed document back to the law firm that evening, however, Hess did not sign it himself or file it electronically with the court, because he had not yet personally read over the document with Stevens.

A pretrial conference was scheduled in Stevens' case on Monday, January 12, 2009. Hess went to the jail to meet with Stevens beforehand, only to find that he had already been transported to the courthouse. Hess then met with Stevens in the Marshals Service lockup in the courthouse and read through the Plea

---

[1] Hess remembered that the prosecutor had previously offered a written Plea Agreement that did not include a drug weight stipulation. Because neither attorney had a copy of this previous agreement in their files, however, the parties stipulated at the evidentiary hearing that the agreement emailed to Hess on January 8, 2009, was the first written version of the plea negotiations.

Agreement with him, line by line.[2]  He asked if Stevens understood the stipulation to a BOL of 32 and what it represented; if he understood that the court had the discretion to depart from that level in calculating the sentence for the drug offense; that he would receive an additional five years on the firearm offense; and if he understood the waiver of appeal and collateral attack rights.  At the end of the meeting, Stevens confirmed to Hess that he understood the nature of the Plea Agreement and the possible punishment he faced and that he wanted to accept the agreement.  Only then did Hess sign the Plea Agreement and give the document to Lee.

As already discussed, I questioned Stevens at length during the plea hearing on January 26, 2009, about his understanding and acceptance of the terms of the Agreement.  He gave no indication during that hearing that his entry of the guilty plea, pursuant to the Agreement, was anything but knowing and voluntary, and I found it to be a valid plea.

Before the sentencing hearing, Hess reviewed a copy of the PSR with Stevens.  He and Stevens discussed putting on witnesses at sentencing, but Stevens did not want his family members involved.  Hess made no objection to the PSR

---

[2]  A log sheet for the Marshals Service lockup for January 12, 2009, does not include an entry documenting that Hess visited with Stevens there that day.  Hess testified, however, that he did not always sign in on the log sheet when visiting clients in the lockup.  Moreover, Stevens offered no testimony at the evidentiary hearing indicating that Hess failed to review the Plea Agreement with him before the plea hearing.

and did not put on any evidence at the sentencing hearing. I adopted the Plea Agreement stipulation that Stevens' BOL should be 32, as well as the PSR's recommendation that he receive a four-level enhancement for his leadership role in the drug conspiracy and a three-level reduction for acceptance of responsibility, bringing his Total Offense Level to 33.[3] I also adopted the PSR recommendation that Stevens qualified for a Criminal History Category II, resulting in a sentencing range of 151 to 180 months for the drug trafficking conviction.

The government argued that Stevens, at age 59, was old enough to know the dangers of drug distribution and that the serious nature of his offense warranted a sentence at the top of the guideline range. Hess argued that Stevens should receive a sentence at the low end of the range, based on his multiple health complications, his suicide attempt and its lingering effects, and his family problems, as detailed in the PSR. He also argued for a lower sentence, based on the mandatory consecutive sentence Stevens faced on the firearm offense and on indications that Stevens undertook drug trafficking primarily to feed his own addiction, which was itself an outgrowth of the physical pain he suffered from multiple medical problems.

I found from the evidence in the case, however, that Stevens did, voluntarily and not merely as a result of his own addiction, play a leadership role in the

---

[3] Hess admitted that in advising Stevens about the benefits of the Plea Agreement, he failed to predict that Stevens would receive a Criminal History Category II and failed to advise Stevens that he might receive an increase in offense level based on his leadership role.

conspiracy. Nevertheless, I sentenced him to 151 months on the drug offense, the low end of the guideline range, and to 60 months on the firearm offense, for a total sentence of 211 months of imprisonment.

In support of his claim that he was denied counsel, Stevens argues that: (a) Hess had Conway deliver the Plea Agreement and obtain Stevens' signature on it on January 8, 2009, without assistance by counsel; (b) Hess failed to make any independent analysis of the sentencing guideline range likely to be applied, given the facts of Stevens' case, essentially depriving him of counsel at the January 12, 2009, meeting about the Plea Agreement; (c) Hess failed to advocate for Stevens at sentencing; and (d) Hess committed violations of the ethical rules governing attorney conduct. On the evidence presented at the hearing, I do not find that Stevens was denied counsel for purposes of an analysis under *Cronic* in any of the respects Stevens alleges.

I found Hess to be a credible witness, and based on his unrebutted testimony, I find that his actions did not deprive Stevens of representation by counsel at the time he signed the Plea Agreement. Hess discussed the government's case and the plea negotiations at length with Stevens before January 8, 2009. Based on those discussions, Stevens agreed that limiting the drug weight might be a problem if he proceeded to trial and gave Hess his verbal approval for a plea agreement that stipulated to a BOL of 32. Thus, although Hess did not deliver the Plea Agreement

to Stevens on January 8, 2009, Stevens did not sign the agreement without the benefit of counsel's previous advice concerning this strategic choice. Moreover, the document Stevens signed that day was not completed and submitted to the court until January 12, 2009, after Hess had reviewed the Agreement in detail with Stevens and had obtained his express acceptance of its terms.

I also find that Hess did not deprive Stevens of counsel in determining the advisability of the Plea Agreement over pleading guilty without any agreement. Hess estimated from codefendants' statements and other evidence in the government's file that the drug weight calculation might be as high as a BOL of 40. This estimation turned out to be higher than the drug amount calculated in the PSR, which placed Stevens within a BOL of 32, even absent the stipulation. (PSR ¶ 74.) However, Stevens offered no evidence at the hearing indicating that Hess' fears about drug weight were unreasonable. Moreover, the PSR states, "Although the drug weight attributable to the defendant based on the investigative materials in this case yielded a drug weight of 1,167.8 kilograms of marijuana, it is plausible that it was actually much higher." (PSR ¶ 230.)

Stevens' claim that Hess failed to advocate on his behalf at sentencing is unsupported by the record. Stevens has presented no evidence on which Hess could have made a viable objection to the drug amount calculation or the leadership role enhancement or on which he could have argued for a downward

departure. Nevertheless, Hess successfully argued for a sentence at the bottom of the range based on the PSR's evidence that Stevens' drug trafficking stemmed mostly from his own addiction and health problems.

Finally, I find no merit to Stevens' arguments that unethical conduct by Hess constituted deprivation of counsel. Specifically, Stevens argues that the fee Hess charged to Stevens violated state bar ethical rulings. Hess testified at the hearing that Stevens had paid his law firm a fee of $25,000 at the beginning of the case, and that "[t]here was no agreement about returning the money to him," regardless of the amount of time actually spent on the case. (Tr. 2255 Hr'g 28, Apr. 11, 2011.) Stevens now argues that this constituted an unethical fee arrangement, citing Virginia State Bar Legal Ethics Opinion No. 1606 (1994), *available at* www.vacle.org/opinions/1606.htm. In that opinion, it was held that a nonrefundable fee arrangement is contrary to the disciplinary rules on the ground that it violates the client's absolute right to terminate the professional relationship at any time.

Stevens misunderstands this legal ethics opinion. Stevens hired the Conway Law Firm and Hess to represent him in this criminal case for an advanced fixed fee. That meant that no matter how much time or effort Hess and the other firm members spent on the case, the fee paid in advance covered those services. If, of course, Stevens in his absolute discretion had discharged Hess and the firm before

the case was over, then he would have been entitled to a refund of some part of the fee paid based on the work done to date. But once the case was over, and the representation concluded, Stevens was not entitled to any refund. An advanced fixed fee of this nature is perfectly proper, and as the legal ethics opinion stated, "is to be encouraged" because of the certainty that it brings to the client's financial obligation. *Id. ¶* 5. The "nonrefundable fee" condemned by the state bar is one in which the fee is not refundable even if the lawyer-client relationship is concluded before the case or transaction is completed. That was not the type of fee arrangement shown by the evidence in this case.

While the fee here was large, it was not unreasonable based on the seriousness of the charges against Stevens and the potential complexity of the case. At the time the fee was paid, no one could predict whether or not the case ultimately would go to a lengthy trial or would be concluded by a guilty plea. Stevens has failed to show that the fee arrangement here constituted any sort of conflict in interest.

Stevens also argues that counsel acted unethically in advising him to accept the waiver contained in the Plea Agreement of his right to bring a § 2255 action, because § 2255 motions are the primary vehicle for raising claims of ineffective assistance of counsel. He cites Virginia State Bar Legal Ethics Opinion No. 1857 (July 21, 2011), *available at* www.vacle.org/opinions/1857/htm. This legal ethics

opinion was issued over two years after the date of Stevens' Plea Agreement. Since then, the United States Attorney for this District has not sought waivers of ineffective assistance claims in plea agreements.

The Virginia opinion held that it is not unethical to advise the client *about* the waiver provision, but only to advise the client to accept it. There is no evidence here that Hess counseled Stevens to accept the waiver.

Where defense counsel had an actual conflict of interest that adversely affected the lawyer's performance on a defendant's behalf, prejudice is presumed. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Stevens fails to demonstrate any respect in which the fee arrangement or the waiver of § 2255 rights, as the asserted conflicts of interest here, adversely affected Hess' representation of Stevens. I find no evidence that Hess advised Stevens to plead guilty in order to do as little legal work as possible or in order to insulate himself against claims of ineffective assistance.

For the stated reasons, I will deny relief as to all of Stevens' claims that he was denied the assistance of counsel. Because these claims are without merit, they do not undermine confidence in the validity of Stevens' plea hearing statements concerning his valid guilty plea, pursuant to the Plea Agreement, and his waiver of § 2255 rights.

Hess should have presented the Plea Agreement to Stevens in person before Stevens signed it, in order to avoid any misunderstandings as to Stevens' knowledge of its terms. Hess should have predicted and advised Stevens that he probably would receive a four-level enhancement for his leadership role in the conspiracy, so that Stevens could have considered this factor in deciding whether to accept the Plea Agreement. Even assuming without deciding that these omissions might fall below the range of performance expected from an effective criminal defense attorney, however, Stevens fails to establish grounds for habeas relief.

To the extent that Stevens claims his guilty plea was invalid, he must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. He has not carried his burden. In his post-hearing briefs, Stevens does not contend that absent counsel's alleged errors, Stevens would have proceeded to trial.[4] He offered no evidence at the hearing on which he stood any likelihood of achieving acquittal at trial on any of the charges or on which he could have proven responsibility for a lesser drug amount.

---

[4] Stevens asserted in his initial pro se § 2255 motion that absent his erroneous belief that Bart Conway was a licensed attorney, he would not have agreed to the Plea Agreement and would not have entered a guilty plea. As already discussed, however, he did not pursue this argument at the evidentiary hearing or thereafter.

Stevens also fails to demonstrate a reasonable probability that but for counsel's errors, a reasonable defendant would have pleaded guilty without the offered Plea Agreement. *Strickland*, 466 U.S. at 694-95. Through the agreement, Stevens limited his sentence exposure based on drug amount and garnered the prosecutor's promise not to object to acceptance of responsibility points. Nothing in the record suggests that Stevens could have escaped the four-point enhancement for a leadership role, with or without the Plea Agreement. Thus, I cannot find that earlier understanding of this enhancement would have caused Stevens to reject the Agreement. Finally, Stevens fails to present any viable ground on which he could have appealed his conviction or his sentence, or on which he could have obtained relief from his conviction or sentence under § 2255.

Because Stevens fails to demonstrate prejudice under *Strickland*/*Hill*, Stevens' constitutional claims of ineffective assistance fail and do not undermine confidence in the veracity of his plea hearing statements indicating the validity of his guilty plea pursuant to the Plea Agreement. *Lemaster*, 403 F.3d at 221-23. Therefore, I find that he waived his right to bring this motion, and it must be denied.

## III

For the reasons stated, I will grant the government's Motion to Dismiss and deny the § 2255 motion.   A separate order will be entered herewith.

DATED:   September 28, 2011

/s/  James P. Jones
United States District Judge